# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### HELENA DIVISION

| | |
|---|---|
| ROBERT L. ROSE, | Cause No. CV 10-00002-H-DWM-RKS |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| STATE OF MONTANA, et al., | |
| Defendants. | |

On January 26, 2010, this Court granted Plaintiff Robert Rose's motion to proceed in forma pauperis and conducted an initial prescreen of his Complaint filed pursuant to 28 U.S.C. § 1915.  Mr. Rose was given the opportunity to file an amended complaint.  After two extensions of time, Mr. Rose filed an Amended Complaint.  The Court will now complete the prescreening process dictated by 28 U.S.C. § 1915.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

A number of claims fail to state a claim upon which relief may be

granted and will be recommended for dismissal.  The Court finds that Plaintiff's remaining claims are too disparate in subject matter and parties for Mr. Rose to proceed in one lawsuit, and are therefore in violation of the rules of joinder as set forth in the Federal Rules of Civil Procedure and the Local Rules.  As such, Plaintiff will be given an opportunity to choose the two undismissed claims on which he will proceed.  All other claims will be recommended for dismissal without prejudice.

## I.  STATEMENT OF THE CASE

### A.    Parties

Mr. Rose remains a state prisoner incarcerated at Montana State Prison in Deer Lodge, Montana.  In his Amended Complaint, Mr. Rose named the following Defendants:  the State of Montana, the Montana Department of Corrections, Mike Ferriter, Mike Mahoney, Ross Swanson, Myron Beeson, Greg Budd, Kenneth Neubauer, Tom Woods, Edward Short, Ken Cosby, Michelle Steyh, Billy Reich, Denise Deyott, Anita Larner, Colleen Ambrose, Trish Robles, Eric Miller, Sean Arvish, Mark Lockrie, Roxanne Wigert, Pat Smith, and Jerry Johnson.  He also

indicates Does 1-10 are mentioned in his complaint and can be identified during discovery.

Several defendants named in the original complaint were not named in the Amended Complaint:  Montana State Prison, Governor Brian Schweitzer, Property Officer Foster, Dianne Turner, Robert Turner, Paul Lucier, and Elizabeth Rantz.  Since an amended complaint (as Mr. Rose was told , Court's Doc. 4) supersedes the original complaint, these individuals will be recommended for dismissal.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

### B. Allegations

Counts 1 through 4 allege a denial of medical treatment beginning in November 2007 when Defendants Lockrie and Larner caused Mr. Rose's orthopaedic shoes to be destroyed.  Mr. Rose alleges he was prescribed a replacement pair of orthopedic footwear in August 2008 but as of the filing of his Complaint he had not been given any such shoes.  Mr. Rose names Defendants Larner, Lockrie, Ambrose, Ferriter, and John Doe medical staff with regard to these claims.

Counts 5 and 6 allege Mr. Rose was retaliated against when he

was moved from the B-Unit to the D-Unit of the prison after he returned from Court on November 6, 2006.

Counts 7 through 13 allege Mr. Rose was retaliated against beginning in December 2006 after he complained that prison staff were arbitrarily shutting off the inmate phone system.  He contends that after he made his complaints the staff started turning off the phone system earlier and earlier.  He names Defendants Reich, Swanson, Short, Larner, Ferriter, Beeson, Robles, and Steyh with regard to these claims.

Counts 14 through 16 and 27 allege Defendants Larner and Ambrose confiscated his legal documents on May 23, 2007 thus denying him access to the courts.  He also alleges Defendants Ambrose and Deyott then met and decided that inmates could not receive case law through the mail in retaliation for Mr. Rose's grievances and lawsuits.

Counts 18 through 20 allege Mr. Rose was retaliated against and his due process rights were violated when his mail was interfered with and not properly delivered to him.

Counts 21-31 allege multiple incidents of retaliation including

harassment by Sean Arvish because Mr. Rose named him in a lawsuit; threats in retaliation for filing grievances by Defendants Swanson Steyh, and Robles; false disciplinary charges based upon Eric Miller planting alcohol in his cell; and an unfair disciplinary hearing regarding the alcohol planted in his cell.

Count 28 alleges Defendants Pat Smith and Jerry Johnson retaliated against Mr. Rose by transferring him to Crossroads.

## II.  CLAIMS WHICH FAIL TO STATE A CLAIM

### A.  Counts 5-6:  Statute of Limitations

The United States Supreme Court in the matter of *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), determined that the applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions.  In Montana, that period is three years after the action accrues.  *Mont. Code. Ann. § 27-2-204(1)*.

Mr. Rose's fifth and sixth claim are the same as his fourth cause of

action in his original complaint.  As the Court found in its prior Order,

these claims arose prior to January 2007 (three years prior to the filing

of this action).  Accordingly, the claims are barred by the applicable

statute of limitations and will be recommended for dismissal.

## B.  Retaliation Count 15:  Destruction of Legal Document

Mr. Rose alleges Defendants Ambrose and Larner's confiscation

and destruction of his Ninth Circuit legal documents from a locked

cabinet in the library on May 23, 2007 was motivated out of a desire to

silence his grievances and litigation against the prison and department

of correction employees.

This allegation fails to state a claim upon which relief may be

granted.  Mr. Rose presented no allegation from which retaliation could

be plausibly inferred.  Mr. Rose alleges the documents taken pertained

to his Ninth Circuit appeal of a case originally filed in this Court in

November 2003.  Although the Montana Department of Corrections was

originally named as a Defendant, the Department of Corrections was

dismissed from the case on March 25, 2005 and Mr. Rose did not appeal

that dismissal.  *Rose v. Scott*, 357 Fed.Appx. 77 (9th Cir. 2009).  No

other Department of Corrections employees were involved in that case.

Mr. Rose bears the burden of establishing that the actual "substantial"

or "motivating" factor behind the deprivation of constitutional rights

was retaliation for exercising legal rights. *Soranno's Gasco, Inc. v.*

*Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (*citing Mount Healthy City*

*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *accord Cain*

*v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988) (inmate bringing

section 1983 retaliation action against prison officials must allege "a

chronology of events from which retaliation may plausibly be inferred").

Here, Mr. Rose has failed to allege a sufficient nexus between his

First Amendment activities and the confiscation of his legal documents

in an unrelated case.  Mr. Rose has already been given an opportunity

to amend this claim.  As such, it will be recommended for dismissal. *See*

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)

("Where the plaintiff has previously filed an amended complaint ... the

district court's discretion to deny leave to amend is particularly broad.")

(citation and internal quotation marks omitted).

## C.  Retaliation Counts 18-19:  Interference with Mail

Mr. Rose alleges mail room staff and Denise Deyott took adverse action against him for filing grievances.  He contends he filed grievances on April 20, May 2, May 29, August 13, September 20, and October 26, 2007 and a tort claim case in August 2007 regarding problems with receiving and sending mail.  In retaliation, Defendants started delaying the delivery of his mail and/or not delivering it at all. He contends Defendants Robles, Larner, Steyh, Swanson, and Ferriter "rubber stamped" his grievances.

The Court will recommend these claims be dismissed for failure to state a claim.  There is no plausible claim for retaliation here.  Mr. Rose alleges Defendants interfered interfering with his mail both before and after he filed his grievances and lawsuit.  As such, he cannot establish a retaliation claim.

## D.  Retaliation Count 21:  Harassment

Mr. Rose alleges Defendants Swanson, Steyh, and Robles retaliated against him by threatening and harassing him after he filed grievances.  Specifically, he alleges that the second week of October

2007, Defendant Steyh delivered four grievances to him and then verbally harassed him about his grievance activity.  Defendant Steyh allegedly informed Mr. Rose that if he did not like it at Montana State Prison he could be transferred.

The Court does not find this to be a plausible retaliation claim.  It would unreasonable to find a retaliation claim each time a prison official notified an inmate they were in violation of the grievance policy. The mere act of giving notification of an alleged violation is not sufficient adverse action against him that "would chill or silence a person of ordinary firmness from future First Amendment activities." *See  White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (*citing Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Mr. Rose was already given an opportunity to amend this claim and he has still failed to state a claim for federal relief.  Accordingly, this claim will be recommended for dismissal.

### E.  Retaliation Counts 23-24:  Planting False Evidence

Mr. Rose alleges Defendant Miller's adverse action of planting alcohol in his cell was done in retaliation for Mr. Rose writing

grievances against Miller during Mr. Rose's inmate representative activities.  Mr. Rose also alleges Defendant Short falsified his test results regarding whether there was alcohol found in his cell in retaliation for Mr. Rose filing grievances regarding Short's misconduct.

During an MCE meeting the first week of November 2007, Mr. Rose complained that Sgt. Eric Miller was harassing inmates late at night causing unnecessary sleep loss.  On November 9, 2007, a C-Unit Officer said Miller was furious at Mr. Rose when he got the e-mail about Mr. Rose's complaints against him.  On November 13, 2007, Miller allegedly entered Mr. Rose's cell, did not do a shake down but stayed in the cell with the lights off for about ten minutes.  Mr. Rose alleges Miller placed an intoxicating substance in his cell.  Mr. Rose was arrested for allegedly possessing an intoxicating substance on November 14, 2007.

Mr. Rose also sent a misconduct reporting form to Director Ferriter regarding Defendant Short's behavior in September or October 2007.  He alleges that in retaliation for those complaints, Defendant Short falsified the alcohol test findings on the substance found in Mr.

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-10-00002-H-DWM-RKS / PAGE 10

Rose's cell.

Mr. Rose's allegations against Defendants Miller and Short are not plausible in this regard. Mr. Rose defended himself at the disciplinary hearing stating the alleged intoxicating substance was old ice tea or tang that had been sitting in his cup for awhile. Assistant Warden McBeeson later modified the sentence to include a verbal warning to clean up his drinking containers. Mr. Rose cannot establish a retaliation claim under these facts. These claims will be recommended for dismissal.

### F.  Retaliation Count 27:  Destruction of legal property

After Mr. Rose was accused of having an intoxicating substance on November 14, 2007, he was placed in the "hole" for 10 days. After he returned from the hole, he was placed in Close-Unit 2 where he received a write-up for having excessive legal property which he claims he had retained for at least three years. Mr. Rose alleges Defendants Lockrie and Larner sorted through his legal property, returned a portion of it but destroyed the rest. He also lost all of his personal property including family pictures, CDs, a cd player, medical shoes, hobby items,

and supplies.  (Court Doc. 10-2, p. 29).

While Mr. Rose alleges retaliation in regards to the alleged destruction of his property, he does not state why Defendants Lockrie and Larner were retaliating against him.  He does not specifically link the destruction of property with any First Amendment activities.  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001)*; *see also Forsythe v. Walters, 38 Fed.Appx. 734, 738 (3rd Cir. 2002)*(upholding dismissal of retaliation claim finding no evidence of any nexus between the exercise of First Amendment rights and alleged retaliatory conduct).  As such, he has failed to state a retaliation claim.

Moreover, the Montana Supreme Court evaluated the prison's new property policy itself in *Middlemiss v. Ferriter, 348 Mont. 371, 211 P.3d 204 (Mont. 2008)* finding Montana State Prison's new property policy to be reasonable and related to legitimate penological interests.  In that

ruling, the Montana Supreme Court described the property policy as

follows:

> On November 1, 2006, MSP Warden Mike Mahoney signed a
> revised inmate property policy, which became effective
> February 1, 2007.  The purpose of the revised policy was to
> resolve the disparity between the facilities regarding allowed
> personal property and to reduce safety and security
> concerns.  The revised policy established new rules
> applicable to all secure facilities governing what personal
> property items inmates are allowed to possess.  The revised
> policy also provided that personal property items considered
> contraband under the new policy must be sent out of the
> facility by the inmate or would be seized as contraband and
> destroyed.  The cost of shipping contraband personal
> property out of the facility is paid for by the Inmate Welfare
> Fund.  As a result of the revised policy, certain personal
> property items previously allowed to MSP inmates are now
> considered contraband.

*Middlemiss*, 348 Mont. 371, 211 P.3d 204 (Mont. 2008).

Thus, it appears Mr. Rose had been in violation of the property

policy since February 2007.  There could be no chilling of his First

Amendment rights since he had no expectation of maintaining that

property anyway.

In Count 30, Mr. Rose alleges Ferriter's approval of the property

policy which allows staff to destroy legal property rather than storing it

or allowing it to be sent out at inmate's expense violates his

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-10-00002-H-DWM-RKS / PAGE 13

constitutional rights.  Based upon the Montana Supreme Court's

decision, it appears that is not the policy and as such Count 30 will be

also be recommended for dismissal.

### G.  Counts 9 and 11:  First Amendment Right to Associate

Mr. Rose alleges that when prison officers would arbitrarily shut

off the inmate phone system it would interfere with his First

Amendment right to associate with his friends and family.  Limited

telephone access does not rise to the level of a constitutional violation.

The United States Constitution does not provide for an unfettered right

to use a phone.  A telephone is merely one means for an inmate to

exercise limited First Amendment rights to communicate with persons

outside the prison, rights which may be met through other means such

as correspondence or personal visits.  *Valdez v. Rosenbaum*, 302 F.3d

1039, 1048 (9th Cir. 2002).  Mr. Rose admits he was able to make calls,

his complaint is simply that some calls were arbitrarily interrupted.

Mr. Rose does not allege a complete denial of phone access.  Therefore,

Counts 9 and 11 fail to state a claim upon which relief may be granted.

These are not defects which could be cured by the allegation of

additional facts and therefore these claims will be recommended for dismissal.

### H.  Count 14:  Denial of Access to the Courts

Count 14 alleges Defendants Ambrose and Larner's actions in confiscating and destroying his legal documents impeded his access to the courts in violation of the First and Fourteenth Amendments of the United States Constitution.

Pursuant to the Fourteenth Amendment due process clause, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  That access must be "adequate, effective, and meaningful." *Id.* at 822.  To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access.  *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996).  "The injury requirement is not satisfied by just any type of frustrated legal claim"; the Court has stated that prisoners have a right to access to the courts only in relation to direct appeals from the convictions for which

they were incarcerated, habeas petitions, or civil rights actions
challenging the conditions of their confinement.  *Casey*, 518 U.S. at
354-55.

   Mr. Rose contends between November 2006 and June 2007 he was
litigating an appeal in the Ninth Circuit Court of Appeals.  He states he
had most of his legal research and prepared most of his legal documents
on the prison's computer at the low-side library and stored a lot of the
documents in a locked filing cabinet in the low-side library.  Mr. Rose
contends that on May 23, 2007, Anita Larner and DOC attorney Colleen
Ambrose entered the law library, asked where Mr. Rose's legal
documents were stored, confiscated all of his legal documents, and
removed them from the library.

   Mr. Rose's allegations are insufficient to state a First Amendment
claim.  First, Mr. Rose's appeal was not an action challenging a
conviction or conditions of confinement.  Rather, Mr. Rose was suing
two probation officers based upon the imposition of what he alleged
were improper probation conditions.  Secondly, Mr. Rose makes no
allegation and cannot show that he suffered an actual injury as a result

of his legal materials being taken.  Even assuming legal counsel for the

Department of Corrections confiscated Mr. Rose's legal research and

drafts in an ongoing case, Mr. Rose was appointed counsel in his appeal

on August 13, 2008 and appointed counsel filed a replacement opening

brief for Mr. Rose.  The case was then argued before the Ninth Circuit

and the decision of this Court was affirmed on November 23, 2009.[1]

As such, Mr. Rose has not stated a denial of access to the courts

claim.  Given the appointment of appellate counsel, this is not a defect

which could be cured by the allegation of additional facts and it will be

recommended for dismissal.

## I.  Count 22–Unconstitutional Grievance Policy

In the first two paragraphs of Count 22 (¶s 197-198),  Mr. Rose

alleges the grievance policy that Swanson and Steyh relied upon that

---

[1]Pursuant to Rule 201 of the Federal Rules of Evidence, this Court may take judicial notice of filings in another case. *See Biggs v. Terhune, 334 F.3d 910, 916 n. 3 (9th Cir. 2003)* (materials from a proceeding in another tribunal are appropriate for judicial notice); *Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)* (noting that a court may take judicial notice of "matters of public record") *overruled on other grounds Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *United States v. Camp, 723 F.2d 741, 744 n. 1 (9th Cir. 1984)* (citing examples of judicially noticed public records).

restricts the language of his grievances violates his First and
Fourteenth Amendment rights.

Prisoners have a First Amendment right to petition the
government for a redress of grievances and have a First Amendment
right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567
(9th Cir. 2005), but "[t]here is no legitimate claim of entitlement to a
grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.
1988).  "[N]o constitutional right was violated by the defendants' failure,
if any, to process all of the grievances [plaintiff] submitted for
consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).
*See also* *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("When the
claim underlying the administrative grievance involves a constitutional
right, the prisoner's right to petition the government for redress is the
right of access to the courts, which is not compromised by the prison's
refusal to entertain his grievance.").

Thus, the Court will recommend the dismissal of Count 22.


## J.  Count 25:  Unfair Disciplinary Hearing

Mr. Rose fails to state a Fourteenth Amendment due process claim against Defendant Cosby regarding the disciplinary hearing. To state a claim for a due process violation, a plaintiff must show (1) he had a protected liberty interest and (2) was deprived of that interest without adequate due process. If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. *See* *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

In Mr. Rose's case, the threshold requirement for showing a liberty interest is not met. Mr. Rose is serving a thirty-year term for

aggravated kidnapping and several other offenses.  *See* CON Network,

http://app.mt.gov/conweb.  "Confinement in any of the State's

institutions is within the normal limits or range of custody which the

conviction has authorized the State to impose." *Meachum*, 427 U.S. at

225.  Consequently, placement in any part of a Montana prison would

not affect the sentence in an unexpected manner.  Therefore, the first

prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met.  Whether a

hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those
> conditions imposed upon inmates in administrative
> segregation and protective custody,' and thus comported
> with the prison's discretionary authority; 2) the duration of
> the condition, and the degree of restraint imposed; and 3)
> whether the state's action will invariably affect the duration
> of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87); *see also*

*Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that

inmate was not deprived of a liberty interest where he was placed at a

higher security level than indicated by calculation under controlling

prison regulations).  Mr. Rose was placed in "the hole" for ten days.

This is not atypical or significant in comparison to inmates in protective custody or inmates whose placement has not yet been determined.  *See Sandin*, 115 S.Ct. at 2301 (30 days disciplinary segregation not "atypical" where no evidence that discipline differed from other kinds of segregation).  Placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986); *Wilkinson v. Austin*, 545 U.S. 209 (2005).  The discipline Mr. Rose received "comported with the prison's discretionary authority." Thus, Mr. Rose cannot show he had a liberty interest in avoiding the discipline received.  *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)("[A]dministrative segregation in and of itself does not implicate a protected liberty interest.")(*citing Sandin*, 515 U.S. at 486).

Therefore, it is irrelevant whether Mr. Rose received adequate due process protections, because he was not constitutionally entitled to due process.  Mr. Rose has failed to state a viable due process claim with regard to the discipline he received and Count 25 will be recommended for dismissal.

## K.  Count 27:  Property Deprivation

In Count 27, Mr. Rose alleges Defendants Lockrie and Larner's destruction of his legal property was an arbitrary property deprivation. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court explained that a state official's unauthorized taking of property under color of state law does not violate the Constitution if the State provides an adequate remedy for the deprivation:

> [A]n unauthorized *intentional* deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

*Hudson*, 468 U.S. at 533 (emphasis added); *see also* *Zinermon v. Burch*, 494 U.S. 113, 129-130 (1990); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  A state post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983.  *See* *Hudson*, 468 U.S. at 531.  In other words, unless the state deprives the plaintiff of the opportunity to be compensated for his lost property, the plaintiff has not been denied due process and has not, therefore, been deprived of his property without

due process.

The Montana Tort Claims Act, Mont. Code Ann. §§ 2-9-101, *et seq.*,

provides an adequate post-deprivation remedy.  *See, e.g.*, Mont. Code

Ann. § 2-9-101(1) (2007):

> "Claim" means any claim against a governmental entity, for
> money damages only, that any person is legally entitled to
> recover as damages because of personal injury or property
> damage caused by a negligent or wrongful act or omission
> committed by any employee of the governmental entity while
> acting within the scope of employment, under circumstances
> where the governmental entity, if a private person, would be
> liable to the claimant for the damages under the laws of the
> state.

The "prisoner exemption" of Mont. Code Ann. § 2-9-108(2) does not

apply to intentional torts; the State remains liable for them, if a private

person would be liable and if the intentional tort is committed within

the scope of employment.[2]  *Id*.  Similarly, state employees are not

immune from suit for intentional torts.  To the extent the employees act

---

[2]Mere negligence by a state official does not deprive an individual
of liberty or property for purposes of procedural due process.  *Parratt v.
Taylor*, 451 U.S. 527, 535-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)
(state employee negligently lost prisoner's hobby kit), overruled in part
on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct.
662, 88 L.Ed.2d 662 (1986).

outside the scope of their employment, they remain subject to liability themselves.  Thus, adequate post-deprivation remedies are available.

In *Zinermon*, the United States Supreme Court created an exception to the post-deprivation remedy rule when:  (1) the deprivation of liberty was predictable; (2) the creation of a pre-deprivation process was not impossible; and (3) the deprivation was the result of an official's "abuse of his position" and therefore was not "random and unauthorized."  *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999)(citing *Zinermon*, 494 U.S. 113).

However, this does not appear to be Mr. Rose's claim.  Mr. Rose has alleged an "arbitrary" deprivation of property.  As such, it would constitute an unauthorized intentional deprivation of property.  Because the post-deprivation remedy rule applies, and because the Court finds the Montana Tort Claims Act to be an adequate state post-deprivation remedy, Mr. Rose cannot state a claim for an intentional deprivation of property under the Due Process Clause to the United States Constitution.

## L.  Count 29:  Eleventh Amendment and Injunctive Relief

In Count 29 Mr. Rose alleges, Defendants Montana State Prison, the Montana Department of Corrections, and Director Ferriter turned a blind eye to staff misconduct, and to a practice of retaliation and as such are deliberately indifferent to violations of his constitutional rights.  As Mr. Rose was advised in the Court's prior Order, claims against the Montana Department of Corrections, Montana State Prison, and Director Ferriter in his official capacity, for money damages are barred by the Eleventh Amendment.  The Eleventh Amendment prohibits actions by private litigants against the state, its agencies, or its employees in their official capacities.  *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).

But Mr. Rose's claims for prospective equitable relief may survive against Director Ferriter.  A state official may be sued for prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Ex Parte Young*, 209 U.S. 123, 159-160, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997).

The Court, however, will recommend the dismissal of Montana State Prison and the Montana Department of Corrections as any claims against those entities would be duplicative of the claims against Director Ferriter.  Mr. Rose's claims against the State of Montana, the Montana Department of Corrections, Montana State Prison, and all Defendants in their official capacities for money damages will also be recommended for dismissal.

## III.  REMAINING CLAIMS

### A.  Counts 1-4:  Denial of Medical Care

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Such a claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  A medical need is serious "if the failure to treat the

prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

Mr. Rose alleges he suffered a shattered pelvis and paralysis of his right leg in 1994.  When he was incarcerated at Montana State Prison in 1995 he was prescribed orthopedic shoes as part of the treatment for his permanent and chronic lower leg weakness.  He contends without such orthopedic care, he is unable to walk without a profound limp and exacerbating pain to his ankle, knee, and lower back.  He was again prescribed orthopedic shoes in 1996, 2000, and 2006.

On November 14, 2007, prison guards confiscated Mr. Rose's property including his specially made footwear.  He contends property officer Mark Lockrie and Investigator Anita Larner submitted a report stating they confiscated Mr. Rose's property and made a determination

they would return some of the property but would destroy the rest as contraband, including his orthopedic shoes.  Defendants then gave him prison boots and forced him to work in the kitchen.  He contends the lack of special shoes resulted in substantial pain, and had a deteriorating effect on his ankle, knee, and back and caused the return of a profound limp.

Mr. Rose was again prescribed orthopedic footwear on August 18, 2008 and was casted for such footwear on September 16, 2008.  He has, however, not received any such footwear.  He contends as a result his right leg and ankle have deteriorated and his pain is unbearable.

Count 1 seeks to hold Defendants Larner and Lockrie liable for the initial destruction of his orthopedic shoes and thus interfering with his medical treatment.  At this stage in the litigation, the Court cannot say this claim is frivolous, malicious or fails to state a claim on which relief may be granted.  *See Hallett*, 296 F.3d at 744.

Count 2 alleges deliberate indifference by John Doe medical staff. It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to the plaintiff.

Although the use of Doe defendants in this case is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem:  those persons cannot be served with process until they are identified by their real names.  Mr. Rose must take steps promptly to discover the full name (i.e., first and last name) of each Doe defendant and provide that information to the Court in an amendment to his pleading that explains what each such person did or failed to do that caused a violation of his constitutional rights. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants.  If Mr. Rose is unable to identify these individuals by the deadline for amended pleadings, the Doe Defendants will be recommended for dismissal.

Count 3 complains about Defendants Ferriter, Lucier, and Reich's alleged failure to intervene and Count 4 alleges Defendant Ferriter failed to train his subordinates.  Supervisors who are made aware of ongoing constitutional violations through the grievance process may have supervisory liability.  Under § 1983, a supervisor "can be held liable in his individual capacity for his own culpable action or inaction

in the training, supervision, or control of his subordinates; for his

acquiescence in the constitutional deprivation; or for conduct that

showed a reckless or callous indifference to the rights of others."

*Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir.

2007)(internal citation and punctuation omitted).  Mr. Rose alleges

Defendants Ferriter, Lucier, and Reich were made aware of the ongoing

need for his orthopedic shoes through grievances and Defendant

Ferriter failed to train his subordinates.  At this stage in the litigation,

the Court cannot say these claims are frivolous, malicious or fail to

state a claim on which relief may be granted.

### B.  Retaliation Counts 7, 8, 10, 12, 13:  Phone Access

In December 2006, officers began arbitrarily shutting off the

inmate phone system.  Mr. Rose filed grievances on December 7, 2006,

December 15, 2006, January 26, 2007, February 24, 2007, and March

18, 2007.  On March 19, 2007, Mr. Rose contends Defendant Ed Short

responded to one of Mr. Rose's grievances and on the same day changed

the policy to shut off the phone system at 9 p.m. every night instead of

10 p.m.  Mr. Rose believed the motivating factor behind the 9 p.m. shut

off was to silence Mr. Rose's grievances and invite harassment and violence against Mr. Rose by other inmates.

Following the 9 p.m. shut off, officers began arbitrarily shutting the phone system off before 9 p.m. during inmate calls resulting in unnecessary hook-up fees and expenses.  Mr. Rose filed grievances on March 19, March 25, April 12, April 19, and April 26, 2007.  On or about May 12, 2007, Major Woods issued another command post order requiring the entire inmate collect calling system be shut off at 8:30 p.m.

Mr. Rose believes Major Woods, the Wardens, and Unit Managers held a secret meeting to discuss Mr. Rose's grievances and a collective decision was made to shut the phones off at 8:30 p.m. as a means of silencing Mr. Rose.

Given the number of grievances and the timing of the alleged adverse actions, the Court cannot say these claims are frivolous, malicious or fails to state a claim on which relief may be granted.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)("Timing can properly be considered as circumstantial evidence of retaliatory intent.").

## C.  Retaliation Counts 16-17:  Rejecting Case Law in Mail

Next Mr. Rose alleges Defendants Ambrose and Deyott held a "secret mail room meeting" on June 7, 2007 (the same day Defendant Ambrose responded to Mr. Rose's informal grievance regarding the confiscation of his legal document) and decided to reject all incoming case law from Mr. Rose's wife in retaliation for Mr. Rose grieving the confiscation of his legal documents and case law from the library.  He appealed this decision to Ross Swanson and Director Ferriter.

Given the timing of the alleged adverse action and the allegation of an ongoing violation, the Court cannot say these claims are frivolous, malicious or fails to state a claim on which relief may be granted.  *See Pratt*, 65 F.3d at 808 ("Timing can properly be considered as circumstantial evidence of retaliatory intent.").

## D.  Retaliation Count 22 (¶s 199-200)–Urinalysis

Mr. Rose alleges Defendants Short and Miller's decision to subject him to a urinalysis test and to test other inmates in order to incite anger and violence against Mr. Rose amounted to retaliation for filing grievances.  Mr. Rose alleges he submitted misconduct forms to Director

Ferriter regarding Defendant Short in September and October 2007.
He alleges within ten days of submitting those forms he and all the
inmates on his block were strip searched and subjected to urine tests by
Defendant Miller.  Mr. Rose alleges Defendant Miller told him (in front
of all the other inmates) that he should not have filed a complaint
against Defendant Short because he is the one who ordered the
searches.

Given the timing of these searches and Defendant Miller's alleged
statements, the Court cannot say these claims are frivolous, malicious
or fails to state a claim on which relief may be granted.

### E.  Retaliation Count 26–Classification Decision

On December 1, 2007, after serving ten days in the hole based
upon the intoxicating substance incident, Mr. Rose was reclassified to a
different part of the prison by Defendants Arvish, Robles, and Wigert.
The classification document indicated Mr. Rose was reclassified because
he was disruptive in filing grievances.  Mr. Rose alleges the
reclassification violated his due process rights and constituted
retaliation.

Mr. Rose's reclassification, in itself, is not a viable claim.

Prisoners do not have a constitutionally recognized liberty interest in a

particular security classification or in remaining in the general prison

population. *See Pratt,* 65 F.3d at 806; *Moody v. Daggett,* 429 U.S. 78, 88

n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)(the due process clause does not

create a liberty interest in an inmate's classification); *Olim v.*

*Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

But to the extent Mr. Rose is raising a retaliation claim regarding

his reclassification, the Court cannot say, at this stage in the litigation,

that this claim is frivolous, malicious or fails to state a claim on which

relief may be granted.

## F.  Retaliation Count 28:  Transfer to Different Prison

Mr. Rose alleges he was transferred to Crossroads Correctional

Center in Shelby, Montana on March 18, 2008.  (Court Doc. 10-2, p. 3, ¶

14).  He contends Defendants Smith and Johnson's decision to transfer

him was done in retaliation for his grievances and lawsuits.

Mr. Rose's transfer, in itself, is not a viable claim.  Prisoners do

not have a constitutionally protected liberty interest in where they are

housed.  *Meachum v. Fano*, 427 U.S. 215, 225-27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  But the Court will address the transfer in light of the retaliation claim because prisoners may not be transferred in retaliation for the exercise of their First Amendment rights.  *See Pratt, 65 F.3d at 806*.

Mr. Rose alleges Dave Beatty, the prison librarian, told him that Colleen Ambrose told Mr. Beatty not to consider hiring Mr. Rose since they were arranging to transfer him to another prison due to his grievances and law suits.  At this stage in the litigation, the Court cannot say that this claim is frivolous, malicious or fails to state a claim on which relief may be granted.

### G.  Count 20:  Interference with Mail

Mr. Rose alleges the prison's policy or practice that allows his mail to be deemed undeliverable without an independent review of that decision before the mail is destroyed is unconstitutional in violation of the due process clause of the Fourteenth Amendment.  He alleges the mail room staff and Denise Deyott violated his Fourteenth Amendment rights when they rejected mail without providing an undeliverable

notice and for refusing to send his mail back to the sender.

When prison officials intercept incoming mail, it "must be accompanied by minimum procedural safeguards." *Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002)* (*citing Procunier v. Martinez, 416 U.S. 396, 417-18 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)*); *see also Krug v. Lutz, 329 F.3d 692, 696-98 (9th Cir. 2003).* In affirming an injunction requiring the Arizona Department of Corrections to allow prisoners the right to appeal a decision to exclude incoming mail to a prison official other than the one who made the initial exclusion decision, the Ninth Circuit Court of Appeals held,

> Following *Thornburgh*, this circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in *Martinez*. Although these cases have focused upon the minimum procedural safeguard of notice to the prisoner, the right to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision is equally necessary.

*Krug*, 329 F.3d at 697-98.

*Krug* makes clear that Mr. Rose has a constitutional right to a two-level review. If there is a policy at Montana State Prison which

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-10-00002-H-DWM-RKS / PAGE 36

does not allow an independent review of intercepted incoming mail, that could constitute a due process violation.  At this stage in the litigation, the Court cannot say that this claim is frivolous, malicious or fails to state a claim on which relief may be granted.

## IV.  VIOLATION OF JOINDER RULES

Plaintiff was clearly advised in the Court's prior Order that he would not be allowed to bring unrelated claims in his amended complaint.  The claims set forth above which the Court does not find to be frivolous, malicious, or fail to state a claim seek to bring a wide variety of unrelated claims.  This is improper under the Federal Rules of Civil Procedure and will not be allowed.

Federal Rule of Civil Procedure 20, titled Permissive Joinder of Parties, in pertinent part, provides that defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2).

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-10-00002-H-DWM-RKS / PAGE 37

Rule 20 is a flexible rule that allows for fairness and judicial economy.  The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.  7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure § 1652* at 371-72 (1986). "Instead of developing one generalized test for ascertaining whether or not a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts  . . .  have adopted a case by case approach." *Id., § 1653 at 382*.

Rule 20(a)(2) imposes two specific requirements for the permissive joinder of parties:  (1) a right to relief must be asserted against, each defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action. *See League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 558 F.2d 914 (9th Cir. 1977)*.

The remaining claims discussed in Section III above are disparate and unrelated:  denial of medical care (Counts 1-4), retaliation with

regard to phone access (Counts 7, 8, 10, 12, 13), retaliation regarding rejecting case law in the mail (Counts 16-17), a retaliatory urinalysis (Count 22 ¶s 199-200), a retaliatory classification decision (Count 26), a retaliatory transfer to a different prison (Count 28), and interference with mail (Count 20).

The denial of medical care claim is a completely separate claim from the other claims.  It arose in November 2007 and apparently continues to this day.  Moreover, the retaliation claims are all different claims involving different defendants arising at different periods of time.  For example, the phone access claims arose between December 2006 and April 2007.  The case law claims arose in June of 2007 and involved Defendants Ambrose and Deyott.  The urinalysis claim arose in September or October 2007 and only involved Defendants Miller and Short.  The classification decision claim arose on December 1, 2007 and involved Defendants Arvish, Robles, and Wigert.  Plaintiff was transferred to a different prison in March 2008 and that claim only involves Defendants Pat Smith and Jerry Johnson.  Finally, the interference with mail claim is a policy claim presumably against

Defendant Ferriter which arose in August 2007.

These claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences and they lack a question of law or fact common to all defendants. Plaintiff's vast array of claims are disparate and unrelated and are inappropriate for joinder under Rule 20.

Pursuant to Standing Order No. DWM-27, "no prisoner may maintain more than two (2) civil actions *in forma pauperis* at one time, unless the prisoner shows that he or she is under imminent danger of serious physical injury." Accordingly, Plaintiff must choose which two claims with which he would like to proceed. One of those claims will remain in this lawsuit. The other, if he chooses to bring another, will be a separate lawsuit. Mr. Rose is required to file a new Motion to Proceed In Forma Pauperis and Complaint for that claim if he chooses to bring one. All other claims will be recommended for dismissal without prejudice.

## V. CONCLUSION

The Court has considered whether Mr. Rose's Amended Complaint

is frivolous, malicious, fails to state a claim, or seeks solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  It has also considered whether Mr. Rose has a reasonable opportunity to prevail on the merits.  *See* 42 U.S.C. § 1997e(g).  The Court concludes dismissal of the following claims:  denial of medical care (Counts 1-4), retaliation with regard to phone access (Counts 7, 8, 10, 12, 13), retaliation regarding rejecting case law in the mail (Counts 16-17), a retaliatory urinalysis (Count 22 ¶s 199-200), a retaliatory classification decision (Count 26), a retaliatory transfer to a different prison (Count 28), and interference with mail (Count 20) is not appropriate at this time.  However, as the bringing of these claims in one lawsuit is inappropriate under the rules of joinder, Mr. Rose must choose with which two of these multiple claims he would like to proceed.

Defendants Brian Schweitzer, Property Officer Foster, Dianne Turner, Robert Turner, Paul Lucier, and Elizabeth Rantz will be recommended for dismissal without prejudice as Mr. Rose failed to name these Defendants in his Amended Complaint.  Similarly, although

the State of Montana and Warden Mike Mahoney were listed as

Defendants in the Amended Complaint, they were not named in any of

the claims.  Accordingly, they too will be recommended for dismissal

without prejudice.

The Montana Department of Corrections and Defendants Budd,

Neubauer, and Cosby will be recommended for dismissal with prejudice.

Counts 5, 6, 9, 11, 14, 15, 18, 19, 21, 22(¶s 197-198), 23-25, 27, and 30

will be recommended for dismissal with prejudice.[3]  The Court has

already provided Mr. Rose with an opportunity to amend these claims

and he has failed to successfully do so.  These claims should be

dismissed with prejudice.

Based on the foregoing, the Court issues the following:

## ORDER

1. On or before **August 13, 2010**, Plaintiff shall notify the Court

which two of the six following separate claims he would like to proceed:

denial of medical care (Counts 1-4), retaliation with regard to phone

---

[3]The Court does not construe Count 31 as an actual claim for
relief, it appears to be merely a an allegation of causation.

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-10-00002-H-DWM-RKS / PAGE 42

access (Counts 7, 8, 10, 12, 13), retaliation regarding rejecting case law in the mail (Counts 16-17), a retaliatory urinalysis (Count 22 ¶s 199-200), a retaliatory classification decision (Count 26), a retaliatory transfer to a different prison (Count 28), and interference with mail (Count 20).

One selected claim will proceed in this lawsuit - Mr. Rose must inform the Court which claim that will be on or before **August 13, 2010**. Also on or before **August 13, 2010**, Mr. Rose must file a new Motion to Proceed In Forma Pauperis and Complaint for the second claim, if he wishes to proceed with it. It will be prescreened as required by law and if identical to one of those discussed by this order, it will be served in a new, separate law suit.

2. At all times during the pendency of this action, Mr. Rose SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Rose has been released from custody, the

notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further the Court issues the following:

## RECOMMENDATIONS

1.  The State of Montana and Defendants Brian Schweitzer, Property Officer Foster, Dianne Turner, Robert Turner, Paul Lucier, Elizabeth Rantz, and Warden Mike Mahoney should be **DISMISSED WITHOUT PREJUDICE**.

2.  The Montana Department of Corrections and Defendants Budd, Neubauer, and Cosby and Counts 5, 6, 9, 11, 14, 15, 18, 19, 21, 22 (¶s 197-198) 23-25, 27, and 30 should be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Rose may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of

Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This Order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 14th day of July, 2010.


 */s/ Keith Strong*
Keith Strong
United States Magistrate Judge